UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| VENMAR VENTILATION, INC., | Civil No. 07-3132 (JRT/FLN) |
| Third-Party Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| VON WEISE USA, INC., f/k/a/ FASCO INDUSTRIES, INC. | |
| Third-Party Defendant. | |

William A. Lemire, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A**., 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, for third-party plaintiff.

Hal A. Shillingstad and Andrea D. Kiehl, **FLYNN, GASKINS & BENNETT, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for third-party defendant.

This matter is before the Court on third-party defendant Von Weise USA, Inc.'s ("Von Weise") objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on October 24, 2008. The Magistrate Judge recommended denying Von Weise's motion for summary judgment. After a *de novo* review of those objections, *see* 28 U.S.C. § 636(b); Local Rule 72.2(b), the Court adopts the Report and Recommendation for the reasons stated below.

**BACKGROUND**

In November 2005, a heat recovery ventilator (HRV) installed in a building owned by Real Estate Equities, Inc. ("Real Estate") caught fire, causing extensive damage.

(Compl., Docket No. 1, ¶ 6.) Real Estate's insurance company, Chubb Custom Insurance Co. ("Chubb"), brought an action against the manufacturer of the HRV, Venmar Ventilation, Inc. ("Venmar"). (Compl., Docket No. 1.) The HRV contained a motor manufactured by Von Weise, formerly known as Fasco Industries, Inc. ("Fasco").[1] (Third-Party Compl., Docket No. 15.). In September 2007, Venmar brought a third-party complaint against Fasco, and subsequently settled with Chubb. (*Id.*; Stipulation for Dismissal With Prejudice, Docket No. 72.) Venmar alleges that Fasco negligently failed to provide warnings about dangers created by the Fasco motor, and seeks contribution for the damages to Chubb.

Venmar contends that the Fasco motor was dangerous because it included a "cycling" thermal protector instead of a "one-shot" thermal protector. Thermal protectors regulate electrical current and are designed to shut down the motor when it gets too hot. (*See* LeMire Aff., Docket No. 44, Ex. K.) After shutting the motor down, a cycling thermal protector allows the motor to turn back on once it is cool. (*Id.*, Ex. F at 54-56.) In contrast, a one-shot protector permanently shuts down the overheated motor, and the motor must then be replaced. (*See id.*, Ex. C at 62.) Venmar claims that Fasco had a duty to recommend a one-shot thermal protector instead of the cycling thermal protector, because Fasco knew that a cycling protector could eventually wear down through repeated use, and could ultimately cause a fire by failing to turn off an overheated motor.

---

[1] For ease of reference, the Court adopts the parties' practice of using the name Fasco when referring to the third-party plaintiff.

Fasco, on the other hand, claims that the actual cause of the Real Estate fire was another part of the HRV called the capacitor. The capacitor sits on top of the motor to help it run more efficiently. (Shillingstad Aff., Docket No. 33, Ex. S at 11.) Some capacitors include devices that automatically shut down the capacitor if the pressure inside of it gets too high. (*Id.*, Ex. A at 52.) Venmar originally purchased capacitors from Fasco that included this protective device, but later elected to purchase capacitors from other suppliers that did not include this protection. (*Id.*, Ex. A at 51-52.)

Venmar adds that it has a close, collaborative relationship with Fasco in the design of its HRVs. (*See, e.g.*, Forest Aff., Docket No. 48, ¶¶ 5-15.) Affidavits from Venmar employees indicate that Venmar had little expertise in motor design and relied on Fasco to design a custom motor for the HRVs. (*See, e.g.*, To Aff., Docket No. 50, ¶ 8.) Venmar employees further aver that they relied on Fasco's recommendations for how to incorporate Fasco's custom motors into the final, integrated HRV. (*See, e.g.*, Forest Aff., Docket No. 48, ¶ 13.) Fasco disputes this characterization, arguing that it had no role in designing Venmar's final product.

Fasco now moves to dismiss Venmar's third-party complaint on summary judgment. On October 24, 2008, the Magistrate Judge issued a Report and Recommendation recommending that the motion be denied. The Magistrate Judge determined that (1) there are genuine issues of material fact as to whether Fasco's participation in the design of the HRVs was sufficient to trigger a duty to warn; and (2) there are genuine issues of material fact as to whether certain indemnification terms were incorporated into the parties' final contract, preventing the Court from concluding

as a matter of law that Venmar agreed to indemnify Fasco for any damages. Fasco now objects to the Report and Recommendation on three grounds: (1) Fasco did not substantially participate in the HRV design and is therefore protected from liability by the Component Part Supplier Doctrine; (2) the Report and Recommendation fails to apply case law demonstrating the level of participation required for the "substantial participation" exception to the Component Part Supplier Doctrine; and (3) Venmar failed to demonstrate all of the elements required for a claim of negligent failure to warn.[2]

## ANALYSIS

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Because Fasco does not object to the Magistrate Judge's assessment of its indemnification defense, the Court adopts the Magistrate Judge's analysis of that issue without further discussion.

## II.     FASCO'S OBJECTIONS

### A.     Connection to *Taxdahl v. Venmar Ventilation v. Von Weise USA, Inc.*

The Court first notes that this case was argued before the Magistrate Judge in conjunction with *Taxdahl v. Venmar Ventilation v. Von Weise USA, Inc.*, Case No. 07-1314, a case that also involves a fire resulting from a Venmar HRV using a Fasco motor. The issues raised in the two cases are nearly identical, and the similarities in the Magistrate Judge's separate Reports and Recommendations on these cases reflect that commonality. In his objections to the Report and Recommendation in this case, Fasco briefly suggests that the Magistrate Judge failed to properly distinguish between the two cases, and objects to the fact that he "treats the evidence [from the two cases] as interchangeable." (Objections, Docket No. 65 at 2).

The Court does not agree that there was anything improper about the Magistrate Judge's handling of these cases. Despite Fasco's concerns about maintaining the distinction between these cases, the Court notes that even its own objections to the two Reports and Recommendations contain several identical arguments. This approach, along with the approach of the Magistrate Judge and this Court, simply reflects the substantial overlap in the two critical issues at the core of both cases: (1) the extent of the coordination between Fasco and Venmar in the design and final integration of the relevant HRVs; and (2) the risks posed by the cycling thermal protector. In short, the Court recognizes the cases are distinct, and has considered the relevant differences as necessary in both cases.

B.   **The Component Part Supplier Doctrine and the "Substantial Participation" Exception.**

Fasco first argues that it is shielded from liability by the Component Part Supplier Doctrine. Under the Component Part Supplier Doctrine, a manufacturer of a non-defective, multi-use component part is generally not liable for injuries caused by the finished product when its parts are integrated into a larger system. *In re Temperomandibular Joint (TMJ) Implants Prods. Liability Litig.*, 97 F.3d 1050, 1056 (8th Cir. 1996) (applying Minnesota law). There is, however, an exception to this doctrine. A component part supplier may be liable if the supplier "exercised some control over the design of the final product." *In re TMJ Implants,* 97 F.3d at 1057 n.8; *see also Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*, 702 F. Supp. 666, 670 (N.D. Ill. 1988) ("[T]he component maker can be held liable if it does control or influence how the component is incorporated into the final product."). Courts and treatises elsewhere have clarified that this exception requires "substantial participation" in the integration of a component into a final product in order for the component's supplier to be liable. *See* Restatement (Third) of Torts: *Products Liability* §5(b)(1); *Buonanno v. Colmar Belting Co. Inc.*, 733 A.2d 712, 719 (R.I. 1999) ("We hold that this case stands for the proposition that the primary duty is owed by the designer of the assembled machine and not the supplier of the component parts **in the absence of substantial participation** in the integration of the component into the design of the product.") (emphasis added). Finally, this "substantial participation" exception has been applied specifically in cases addressing the duty to warn. *See In re TMJ Implants*, 97 F.3d at 1058 (finding no duty to warn where, *inter*

*alia*, the component supplier "exercised no control over the design, testing, or manufacturing" of the final product); *Crossfield v. Quality Control Equip. Co.*, 1 F.3d 701, 706 (8th Cir. 1993) (finding that a defendant had no duty to warn under Missouri law because, *inter alia*, the component supplier "had no connection with the design or installation" of the integrated product).

Thus, Fasco may be liable for failing to warn of potential defects in the use of the Fasco motor in the integrated Venmar HRV if it "substantially participated" in the integration of that motor into the design of the HRV. As the Magistrate Judge thoroughly explained, Venmar has presented sufficient evidence of such "substantial participation" to defeat summary judgment. Venmar submitted an affidavit from its former vice president of research and development indicating that Venmar "repeatedly consulted with [Fasco] representatives during the period in which [it] developed Venmar Ventilation's first HRVs." (To Aff., Docket No. 50, at ¶ 5). This employee further indicated that Fasco "completely designed the blower [a motor with a fan and a thermal protector included]," which is "the most important part of the HRV," and that Fasco's recommendation about which blower to use "affected how we configured the HRV's shape and size." (*Id*., ¶¶ 13-15). Another employee indicated that Venmar "provided and showed Fasco detailed information about our new products and Fasco in turn actively participated in the evolutive HRV design process by providing advice and recommendations." (Forest Aff., Docket No. 48, ¶ 13.) A third employee described visits by Venmar and Fasco employees to each other's facilities, and indicated that "[g]iven the importance of the motor to our HRVs, it is accurate to say Fasco was a

business partner rather than a mere parts supplier." (Janelle Aff., Ex. 47, ¶¶ 10-11.) Finally, Venmar has provided a series of faxes and drawings exchanged between the parties that could – along with the affidavits referenced above – support a finding that Fasco "substantially participated" in the HRV design. (*See* Forest Aff., Docket No. 48, Exs. A-J.) In those circumstances, the Court agrees with the Magistrate Judge that there is a genuine issue of material fact as to whether Fasco "substantially participated" in the design of the HRV.

Fasco argues that this Court should nonetheless grant its motion for summary judgment because there are "depositions and thousands of pages of competent evidence" that contradict the sworn statements of Venmar's employees. Fasco further argues that many of the Venmar witnesses had been involved in HRV design in earlier time periods, and were not in a position to know specific details about the exact HRV model involved in the fire. Fasco also argues that many of Venmar's witnesses were involved in its residential HRV operations, rather than its commercial HRV operations, and that the HRV involved in the Real Estate fire was produced for commercial use. These contentions, however, go to the weight of Venmar's evidence, rather than its legal sufficiency. Even where witnesses are not able to speak to the exact model that was involved in the Real Estate fire, their testimony as to the practices that had developed between Venmar and Fasco in the development of prior HRV models would certainly be probative as to their approach to later models. Similarly, where Venmar was simultaneously working with Fasco on residential and commercial HRVs, evidence concerning the division of responsibilities in one of those relationships is at least

moderately probative as to the division of responsibilities in the other. Ultimately, the question of whether this and the rest of Venmar's evidence is outweighed by the evidence relied on by Fasco is simply a question for a jury.

Fasco separately argues that the Magistrate Judge ignores case law that establishes a particularly high bar for establishing "substantial participation." Fasco argues that in *Thompson v. Hirano Tecseed Co., LTD*, 456 F.3d 805 (8th Cir. 2006), the Eighth Circuit

> found the component part supplier substantially participated because it observed and assisted in the installation of its part into the whole system, it provided training for the whole system, it tested the system, it observed the subject-defect and instructed users on how to work around the defect, and a contract between the parties existed placing responsibility for the design of the system on [the component part supplier].

(Objections, Docket No. 65 at 10-11.) Fasco argues that Venmar has failed to submit similar specific facts.

Nothing in *Thompson*, however, demonstrates that the Magistrate Judge reached an improper result. As an initial matter, the defendant in *Thompson* was the manufacturer of the entire product in question, not merely a component part. *Thompson,* 456 F.3d at 808-09. The question before the court was "whether a manufacturer is liable for a design defect if it follows a customer's specifications in manufacturing a finished product." *Id.* at 809. To the extent that *Thompson* drew an analogy to the component supplier doctrine – to determine whether the manufacturer sufficiently participated in the disputed design to be held liable – nothing in *Thompson* purports to establish an exclusive list of facts that must be met in order to establish "substantial participation." Substantial participation can take various forms, including designing a component that will perform specifically as

part of the integrated product, or deciding which component best serves the requirements of the integrated product. *See* Restatement (Third) of Torts: *Product Liability*, §5, cmt. e.[3]

### C. Negligent Failure to Warn

Fasco also argues that Venmar has not established one of the prima facie elements of a negligent failure to warn and therefore fails in its claim as a matter of law. Under Minnesota law, to establish a claim for negligent failure to warn, Venmar "must show that: (1) there was a duty to warn about the risk in question; (2) the warnings given, if any, were inadequate; and (3) the lack of an adequate warning was the cause of the plaintiff's injuries." *U.S. Xpress, Inc. v. Great N. Ins. Co.*, No. 01-195, 2003 WL 124021, *4 (D. Minn. 2003) (citing *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987)).

Fasco argues that Venmar has failed to establish that its alleged failure to warn caused the disputed fire damages. According to Fasco, Venmar's claim is that Fasco failed to warn that a cycling protector could fail in a "closed" position,[4] and thereby cause a fire. Fasco argues that in order to satisfy this third element, Venmar must show that the

---

[3] Fasco also briefly argues that "courts have held that without knowledge of the final product, the component part manufacturer cannot be said to have substantially participated." (Objections, Docket No. 65 at 11.) While it is unclear what Fasco believes was lacking in its notice, there is adequate evidence that Fasco participated in the design of Venmar HRVs from their inception, and that Fasco was aware of the design, specifications, and operating parameters of the finished Venmar HRV product.

[4] The cycling protector is designed to regulate electrical current by "opening" and "closing." (LeMire Aff., Docket No. 44, Ex. F at 54-55.) Once the motor reaches a particular temperature, two small metallic contacts "open." (*Id.*) This stops the electrical current from flowing to the motor and allows the motor to cool. (*Id.*) Once the motor is sufficiently cool, the contacts close again, allowing the electrical current to continue. (*Id.*)

thermal protector in the Real Estate HRV actually failed in a closed position.  Fasco claims that Venmar has not, and cannot, establish this element.  In response, Venmar argues that Fasco's explanation of Venmar's failure to warn claim represents only "half" of that claim.  The other half, Venmar argues, is simply that Fasco failed to tell Venmar of an existing safer alternative – the one-shot thermal protector – and that **this** failure caused the Real Estate fire.

Regardless of how broadly Venmar's claim is characterized, the Court agrees with the Magistrate Judge that Venmar has provided sufficient evidence to defeat summary judgment.  Testimony from Fasco suggests that it had been aware far in advance of this incident that an aging cycling protector could fail in a closed position, and that this could cause a fire.  (LeMire Aff., Docket No. 44, Ex. F at 32-36.)  In addition, Venmar has submitted an expert report by Dr. Robert J. Svare, which concludes the following: (1) the Real Estate fire started inside the HRV's blower motor, which was manufactured by Fasco, and was either caused by the motor or the capacitor purchased by Venmar, (*id*., Ex. X at 7); (2) Fasco should have used a one-shot thermal protector to protect against overheating, and if the fire was caused by the motor this choice would have prevented the fire, (*id*., at 10); and (3) one-shot protectors were available and known to Fasco before it manufactured the Real Estate motor, (*id*.).

The Court agrees that a reasonable jury could find this to be sufficient evidence that Fasco's failure to recommend the one-shot thermal protector caused the Real Estate fire.  In addition, in light of the evidence about the specific vulnerabilities of the cycling protector, a reasonable jury could rely on this evidence to infer that the fire occurred after

the protector failed in a closed position.  While it is clear that Svare's report lays the groundwork for a dispute about whether the fire was instead caused by the capacitor, there is simply nothing in the record that would permit this Court to dismiss Venmar's alternative theory – which is also supported by Svare's report – as a matter of law.  In sum, viewing the evidence in the light most favorable to Venmar, this Court finds that a genuine issue of material fact remains as to whether Fasco's failure to warn caused the Real Estate fire.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** Third-Party Defendant's objections [Docket No. 65] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 24, 2008 [Docket No. 64].  **IT IS HEREBY ORDERED** that the Third-Party Defendant's Motion for Summary Judgment [Docket No. 29] is **DENIED**.

DATED:  March 24, 2009  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge